IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| PAMELA G.,<br><br>    Plaintiff,<br><br>v.<br><br>KILOLO KIJAKAZI, Acting Commissioner of Social Security,<br><br>    Defendant. | 8:21CV194<br><br>MEMORANDUM AND ORDER |

  Plaintiff Pamela G. ("Pamela") seeks judicial review of the final decision of defendant Kilolo Kijakazi, Acting Commissioner of Social Security ("Commissioner"), denying her claims for disability benefits under Title II of the Social Security Act (the "Act"), 42 U.S.C. § 401 *et seq.*, and for supplemental security income under Title XVI of the Act, 42 U.S.C. § 1381 *et seq.* Now pending before the Court are Pamela's Motion for an Order Reversing the Commissioner's Decision (Filing No. 18) and the Commissioner's Motion to Affirm Commissioner's Decision (Filing No. 22). For the reasons stated below, the Court affirms the Commissioner's denial of benefits.

I.  **BACKGROUND**

  Born in 1967, Pamela has had limited formal education. She performed past relevant work as a mail clerk and as a "waitress, informal," which the administrative law judge ("ALJ") assigned to her case noted "is a semi-skilled (SVP 3) job at the light physical demand level." Pamela worked as an attendant in a cafeteria until her alleged onset date of October 12, 2016. She was on state disability from August 2017 to August 2018.

  Pamela protectively applied for federal disability benefits and supplemental security income on December 5, 2016, alleging disability due to a heart aneurysm, high blood pressure, knee problems, and the effects of a stroke. The Social Security Administration

("SSA") denied her claims initially and upon reconsideration. Pamela requested a hearing, which was held February 25, 2019. Pamela was represented by counsel. After the hearing, the ALJ denied Pamela's claims, concluding she was not disabled under the Act.

On March 23, 2020, the Appeals Council granted review and vacated the hearing decision. Noting some inconsistency in the analysis and a lack of support for some of the findings, it remanded the case to the ALJ to further evaluate and document Pamela's "mental impairments in accordance with the special technique described in" the regulations and to further consider and explain her maximum residual functional capacity ("RFC").[1]

The Appeals Council explained the ALJ could "obtain supplemental evidence from a vocational expert to clarify the effect of the assessed limitations on [Pamela's] occupational base," advising that any "hypothetical questions should reflect the specific capacity/limitations established by" the expanded administrative record as a whole. The Appeals Council further advised Pamela that the ALJ would offer her another hearing and would "take any further action needed to complete and update the administrative record and issue a new decision."

The ALJ held a telephone hearing on August 12, 2020, at which Pamela was represented by counsel. Pamela and a different vocational expert, Alina Sala ("Sala"), both testified. Pamela's counsel and the ALJ questioned both witnesses.

Pamela described the physical and mental limitations she alleged prevented her from being able to maintain competitive employment. In updating the ALJ on her living situation, Pamela stated she no longer cared for her son as he did not live with her. She

---

[1] A claimant's RFC "is the most [she] can still do despite [her] limitations." 20 C.F.R. §§ 404.1545(a), 416.945(a). It is "based on all relevant evidence, including medical records, observations of treating physicians and others, and claimant's own descriptions of [her] limitations." *Baldwin v. Barnhart*, 349 F.3d 549, 556 (8th Cir. 2003). "[I]t is the responsibility of the ALJ, not a physician, to determine a claimant's RFC." *Boyd v. Colvin*, 831 F.3d 1015, 1020 (8th Cir. 2016).

testified she lived with her husband, who assisted with household chores and drove her to appointments and the grocery store.

Pamela reported continued pain in her back and knee for which she applied a topical cream and planned to see an orthopedist. She stated she was not able to walk for long when grocery shopping and uses a riding cart. Unable to stand too long without pain in her back, Pamela uses a wheelchair to do dishes and takes breaks when sweeping the floor. She does not lift more than a carton of eggs or bread due to pain in her knees, back, and hands and spends most of the day lying down.

Pamela also described her chest pains, anxiety, stress, nerves, and aversion to big crowds and being touched in light of COVID-19. As to her mental health, Pamela stated she was taking medication and seeing a therapist.

After Pamela testified, the ALJ presented some hypothetical situations to Sala. In the first hypothetical, the ALJ asked her to assume someone of Pamela's "age and education who is capable of performing a full range of light work, but has no ability to climb ropes, ladders or scaffolds and has an occasional ability to climb ramps and stairs, but . . . should have no concentrated exposure to temperature extremes, humidity, vibration or workplace hazards such as unprotected heights." Sala opined such a person could perform work as a mail clerk or informal waitress as Pamela had performed them or as generally performed in the national economy. When asked, Sala identified some other work such a person could do, including sales attendant, ticket taker, and checker.

In the second hypothetical, the ALJ added a limitation "to performing simple repetitive, routine tasks and instructions" and to "only occasional contact with the general public and coworkers." Sala opined the individual could still work as a mail clerk but not as a waitress. As to sample alternative jobs, Sala opined the individual could work as a checker, router clerk, or garment sorter but not as a sales attendant or ticket taker.

On September 11, 2020, the ALJ denied Pamela's claims, finding she is not disabled under the Act. Pamela appealed, and the Appeals Council denied review, making the ALJ's second hearing decision the Commissioner's final decision in his case. *See*, *e.g.*, *Combs v. Berryhill*, 878 F.3d 642, 645 (8th Cir. 2017). Pamela seeks review of that decision.

## II. DISCUSSION

### A. Standard of Review

Section 405(g) authorizes a claimant who is unsatisfied with the result of the SSA's review process to seek judicial review of the final decision in federal court. *See Smith v. Berryhill*, 587 U.S. \_\_\_, \_\_\_, 139 S. Ct. 1765, 1772-73 (2019). In conducting that review, the Court does "not reweigh the evidence," *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003), or retry the issues de novo, *see Wiese v. Astrue*, 552 F.3d 728, 730 (8th Cir. 2009). The Court must affirm "if the ALJ made no legal error and the ALJ's decision is supported by substantial evidence on the record as a whole." *Kraus v. Saul*, 988 F.3d 1019, 1024 (8th Cir. 2021) (quoting *Blackburn v. Colvin*, 761 F.3d 853, 858 (8th Cir. 2014)).

"The phrase 'substantial evidence' is a 'term of art' used" to describe how the Court reviews an ALJ's factfinding. *Biestek v. Berryhill*, 587 U.S. \_\_\_, \_\_\_, 139 S. Ct. 1148, 1154 (2019). Its evidentiary threshold "is not high." *Id.* (noting the Supreme Court has famously described it as "more than a mere scintilla" (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938))). "Substantial evidence is less than a preponderance, but enough so that a reasonable mind might find it adequate to support the conclusion." *Grindley v. Kijakazi*, 9 F.4th 622, 627 (8th Cir. 2021) (quoting *Pickney v. Chater*, 96 F.3d 294, 296 (8th Cir. 1996)). "[I]f supported by substantial evidence," the ALJ's factual findings are conclusive. 42 U.S.C. § 405(g).

In deciding "whether substantial evidence exists," the Court considers "evidence that supports the Commissioner's conclusion" as well as "evidence that detracts from" it. *Carlson v. Astrue*, 604 F.3d 589, 592 (8th Cir. 2010). If, upon review, it is "possible to draw two inconsistent positions from the evidence and one of those positions represents

4

the Commissioner's findings, [the Court] must affirm the denial of benefits." *Wiese*, 552 F.3d at 730 (quoting *Mapes v. Chater*, 82 F.3d 259, 262 (8th Cir. 1996)).

### B. Eligibility for Benefits

Pamela must be disabled under the Act to qualify for disability benefits and supplemental security income. 42 U.S.C. §§ 423(a)(1)(E), 1382(a)(1). The Act defines the term "disability" to include the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." *Id.* § 423(d)(1)(A); *accord id.* § 1382c(a)(3)(A).

The disability, not the impairment, must be continuous for at least 12 months. *See Titus v. Sullivan*, 4 F.3d 590, 594 (8th Cir. 1993). Pamela is disabled under the Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

### C. The Five-Step Process

"The regulations implementing the Act set forth a five-step, sequential process for determining whether a claimant is under a disability." *Swink v. Saul*, 931 F.3d 765, 769-70 (8th Cir. 2019); *see also* 20 C.F.R. §§ 404.1520(a), 416.920(a). First, the Commissioner considers the "claimant's work activity, if any." If a claimant is engaged in "substantial gainful activity," the Commissioner will find she is not disabled and will not go on to the next step. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

If the claimant is not engaged in "substantial gainful activity," the Commissioner moves to step two to evaluate "whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities." *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see also* 20 C.F.R.

§§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). The Commissioner can stop the analysis "at step two when an impairment or combination of impairments would have no more than a minimal effect on the claimant's ability to work." *Simmons v. Massanari*, 264 F.3d 751, 755 (8th Cir. 2001).

At step three, the Commissioner "determines based on the medical evidence whether the severe impairments meet or equal the criteria of a 'listed impairment,' which is presumed to be disabling." *Igo v. Colvin*, 839 F.3d 724, 728 (8th Cir. 2016); *see also* 20 C.F.R. Pt. 404, Subpt. P, App. 1. If the claimant has such an impairment that meets the duration requirement, she is considered disabled, regardless of her age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(iii), (d); 416.920(a)(4)(iii), (d).

If the claimant's impairment is severe but does not meet or equal one of the listed impairments, the Commissioner moves on to step four to evaluate whether the claimant retains the RFC to perform her past relevant work. *See Simmons*, 264 F.3d at 755; 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545(a)(5)(i), 416.920(a)(4)(iv), 416.945(a)(5)(i). If so, she is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

If not, the burden of production shifts to the Commissioner at step five "to prove that there are other jobs in the national economy that the claimant can perform" given her age, education, and work experience.[2] *Simmons*, 264 F.3d at 755; *see also* 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant can adjust to other work, she is not disabled; if she can't, she is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

### D. The ALJ's Decision on Remand

On remand from the Appeals Council, the ALJ reapplied this five-step process to Pamela's claim. Though noting some limited work Pamela said she had done for a

---

[2]"The burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five." *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

rideshare company, the ALJ determined she meets the Act's insured-status requirement and "has not engaged in substantial gainful activity" since her alleged onset date.

Moving to step two, the ALJ decided Pamela has the severe impairments of "aortic aneurysm; hypertension; degenerative disk disease of the thoracic and lumbar spine; and degenerative joint disease of the knees and hips." The ALJ noted other impairments in the record, such as diabetes, intraoperative stroke, hand pain, and obesity, and accounted for them in Pamela's RFC but concluded they were not severe.

As to Pamela's "medically determinable mental impairments of anxiety disorder, depressive disorder, and borderline personality disorder," the ALJ found they "do not cause more than minimal limitation in [Pamela's] ability to perform basic mental work activities and are therefore non-severe." In making that finding, the ALJ considered the "paragraph B" criteria the Appeals Council highlighted in its remand order.

The ALJ found Pamela has no more than "mild limitation" in the areas of (1) "understanding, remembering, or applying information," (2) "interacting with others," (3) "concentrating, persisting, or maintaining pace," and (4) "adapting or managing oneself." To Pamela's chagrin, those findings differed from the ALJ's earlier finding of "moderate limitations."

At step three, the ALJ concluded Pamela "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." The ALJ noted neither Pamela nor any acceptable medical source asserted "her impairments met or equaled a listing."

In evaluating Pamela's RFC at step four, the ALJ concluded her impairments reasonably could cause her alleged symptoms but found some of her subjective complaints were "not entirely consistent with the medical evidence and other evidence in the record." The ALJ explained the "evidentiary discrepancies" he identified in his decision "cast serious doubt upon the consistency" of some of Pamela's disability allegations. Carefully

considering "the entire record," the ALJ found Pamela had the RFC to perform light work—except that "she cannot climb ladders, ropes, and scaffolds; she can occasionally climb ramps and stairs; and she should avoid concentrated exposure to temperature extremes, humidity, vibration, and workplace hazards, like unprotected heights." *See* 20 C.F.R. §§ 404.1567(b), 416.967(b).

The ALJ concluded Pamela "is capable of performing past relevant work as a waitress, informal" because the work does not require her to perform work-related activities precluded by her RFC. In addition to Pamela's past relevant work, the ALJ found she can perform "other jobs that exist in significant numbers in the national economy," given her age, education, work experience, and RFC. Accordingly, the ALJ decided Pamela was not disabled.

### E. Issues on Review
#### 1. Law of the Case

Pamela first argues "[t]he ALJ erred in not following the law of the case" regarding her mental limitations. "The law of the case doctrine prevents the relitigation of a settled issue in a case and requires courts to adhere to decisions made in earlier pleadings." *Aguiniga v. Colvin*, 833 F.3d 896, 901 (8th Cir. 2016) (quoting *Brachtel v. Apfel*, 132 F.3d 417, 419 (8th Cir. 1997)). In Pamela's view, the ALJ failed to adhere to its initial findings and failed to comply with the Appeals Council's remand order in violation of 20 C.F.R. § 404.977(b), which requires an ALJ to "take any action that is ordered by the Appeals Council." Pamela contends those failures are legal errors that require remand. The argument is unpersuasive.

First, it is not clear the law-of-the-case doctrine applies to the ALJ's initial findings regarding Pamela's mental limitations. *See Aguiniga*, 833 F.3d at 901. As the Commissioner points out, the Eighth Circuit has held that the law-of-case doctrine does not apply to a hearing decision that has been vacated by the Appeals Council—as happened

8

here. *Id.* (stating "nothing in this case was settled fact or law given the Appeals Council's vacation of the original opinion of the ALJ").

Second, the remand order is not nearly as limited as Pamela seems to suggest. Pamela alleges a violation of § 404.977(b), but she neither cites anything in the remand order clearly indicating the ALJ was bound by his initial analysis nor shows any specific direction that the ALJ materially failed to follow on remand. To the contrary, the remand order gives some direction on the proper analysis and documentation but otherwise gives the ALJ considerable latitude on remand.

It contemplates not only further development of the record, but also a new decision based on the evidence as a whole. *See id.* (noting the ALJ was directed to "[a]ddress the entire relevant period" and "issue a new decision"). The ALJ no doubt could have said more, but his actions on remand did not violate § 404.977(b), which requires an ALJ to follow a direct order yet permits them to "take any additional action that is not inconsistent with the Appeals Council's remand order."

### 2. Full and Fair Record

Pamela next contends "the ALJ erred by not fully and fairly developing the record concerning 'some medical evidence' support for the RFC." *See Lauer v. Apfel*, 245 F.3d 700, 703-04 (8th Cir. 2001) (concluding an RFC must be supported by medical evidence). Although Pamela bears the burden of proving her RFC, *see Kraus*, 988 F.3d at 1024, social-security hearings are not adversarial, *see Snead v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004). "[T]he ALJ bears a responsibility to develop the record fairly and fully, independent of the claimant's burden to press [her] case." *Combs*, 878 F.3d at 647 (quoting *Vossen v. Astrue*, 612 F.3d 1011, 1016 (8th Cir. 2010)). That is true, even when the claimant has counsel. *See Snead*, 360 F.3d at 838.

According to Pamela, "[t]he ALJ erred by not further developing the record by either obtaining medical expert testimony or further medical opinion based on a full record to

9

break the standoff between the opinions of [her primary care doctor, Chelsea Navarette, M.D. ("Dr. Navarette")] and the first agency medical consultant (generally, sedentary-like exertional limitations) and the opinions of the other two agency nonexamining medical consultants (generally, light-like exertional limitations)." Pamela contends the ALJ should have ordered a consultative examination.

As to her mental limitations, Pamela contends the "sum" of the record leads to the "clear" conclusion that she has "severe mental limitations" that should have been accounted for in her RFC and entitled her to benefits. She again suggests the ALJ should have obtained a consultative examination and argues the ALJ should have further investigated whether Pamela's mental-health symptoms prevent her from consistently following treatment. As Pamela sees it, the ALJ "briefly shrug[ged] off the bulk of th[e] record and" improperly denied her "benefits based on her having no mental impairments that limited her ability to work." The Court does not share Pamela's slanted and simplistic view of the ALJ's analysis.

The ALJ's responsibility to develop a full and fair record does not relieve the claimant of her burden of providing detailed evidence to prove she is disabled. *See* 20 C.F.R. §§ 404.1512(a), 416.912(a). Although an ALJ does have discretion to order a consultative examination at the government's expense, if necessary, *see id.* §§ 404.1517, 416.917, the ALJ need not order such an "evaluation of every alleged impairment," *Matthews v. Bowen*, 879 F.2d 422, 424 (8th Cir. 1989). An "ALJ is required to recontact medical sources and may order consultative evaluations only if the available evidence does not provide an adequate basis for determining the merits of the disability claim." *Sultan v. Barnhart*, 368 F.3d 857, 863 (8th Cir. 2004) (citing 20 C.F.R. §§ 416.912(e), 416.919a(b)); *accord Naber v. Shalala*, 22 F.3d 186, 189 (8th Cir. 1994) ("[A]n ALJ is permitted to issue a decision without obtaining additional medical evidence so long as other evidence in the record provides a sufficient basis for the ALJ's decision.").

Nothing in the record indicates "that the ALJ felt unable to make" an informed assessment of Pamela's impairments, and the ALJ's determination of her RFC "is supported by substantial evidence" on the record as a whole. *Tellez v. Barnhart*, 403 F.3d 953, 957 (8th Cir. 2005); *see also Krogmeier v. Barnhart*, 294 F.3d 1019, 1024 (8th Cir. 2002). Indeed, Pamela's assertion that further record development was needed to "break the standoff" she sees in the medical-opinion evidence belies her rote contention that the ALJ failed to rely on "some medical evidence" to support Pamela's RFC. Pamela obviously does not agree with the ALJ's conclusions about the medical evidence, but "[i]t is the function of the ALJ to weigh conflicting evidence and to resolve disagreements among physicians." *Kirby v. Astrue*, 500 F.3d 705, 709 (8th Cir. 2007).

In her reply brief (Filing No. 24), Pamela complains "Eighth Circuit panels for a period have mucked thing [sic] up in this circuit by ignoring controlling circuit precedent." Bemoaning the "significant damage . . . already done," Pamela broadly asserts the cases she "cited in briefing are older than the cases the Commissioner cited." Without any specifics, she asserts, "If the cases conflict, [hers] control."

To the extent Pamela has an issue with the Eighth Circuit's fidelity to its precedent, she will have to direct that complaint to that court. But Pamela's cursory and conclusory argument about precedent adds nothing to this Court's analysis of the pertinent issues in her case. Polemics aside, she has not cited any controlling precedent that compels a remand to further develop the record under the circumstances of this case. In light of the purpose and scope of the remand order and the nature of the second hearing, Pamela's claim—based on her reading of *Lauer*—that she had "no opportunity to the read the ALJ's mind and anticipate the rejection of the available opinion evidence" rings hollow.

### 3. Opinion Weight

Pamela's contention that the ALJ did not provide good reasons for the weight he gave to the opinions of Dr. Navarette and advanced practice registered nurse Paul Wilken ("Wilken") likewise falls short. The weight given "to any medical opinion" depends on a

11

number of factors. 20 C.F.R. §§ 404.1527(c), 416.927(c) (listing factors); *accord Lucus v. Saul*, 960 F.3d 1066, 1068-69 (8th Cir. 2020). In assigning weight, an "ALJ must give good reasons to explain" the weight they give. *Schmitt v. Kijakazi*, No. 20-3341, 2022 WL 696974, at *5 (8th Cir. Mar. 9, 2022) (quoting *Anderson v. Astrue*, 696 F.3d 790, 793 (8th Cir. 2012))).

An ALJ can give less weight to an opinion when it is "inconsistent with the record as a whole or if the conclusions consist of vague, conclusory statements unsupported by medically acceptable data." *Stormo*, 377 F.3d at 806; *see also Piepgras v. Chater*, 76 F.3d 233, 236 (8th Cir. 1996) ("A treating physician's opinion deserves no greater respect than any other physician's opinion when the treating physician's opinion consists of nothing more than vague, conclusory statements."). An ALJ may also "discount or even disregard" an opinion if "other medical assessments are supported by better or more thorough medical evidence," *Kraus v. Saul*, 988 F.3d 1019, 1024 (8th Cir. 2021) (quoting *Papesh v. Colvin*, 786 F.3d 1126, 1132 (8th Cir. 2015)), or if it "is based on a claimant's subjective complaints that ALJ does not find credible," *Vance v. Berryhill*, 860 F.3d 1114, 1120 (8th Cir. 2017).

Here, the ALJ found Dr. Navarette's treating relationship with Pamela positioned her well "to evaluate her functional abilities" but gave "little weight" to Dr. Navarette's opinions regarding Pamela's need "to change position as needed." Highlighting (1) "the vague nature of these limitations," (2) "the somewhat questionable reasoning for them," and (3) Dr. Navarette's admission that she could not be more specific, the ALJ concluded the opinions "provide little insight into [Pamela's] actual functional abilities." The ALJ also did not give "significant weight" to Dr. Navarette's lifting limitation because it "is based solely on [Pamela's] self-report that lifting ten pounds causes pain, rather than on objective medical findings or imaging."

12

Pamela acknowledges Dr. Navarette's opinions are "somewhat qualified" and "vague in the general sense" but argues that even if afforded less weight, those "opinions are more supported and informed than the predictive opinions of the nonexamining agency medical consultants." As Pamela sees it, "the ALJ should not have favored the stale agency medical consultant opinions over the informed Dr. Navarette opinions."

As to Dr. Navarette's statement regarding changing position, Pamela asserts "it was specific enough to preclude the ALJs [sic] RFC finding she could do the standing or walking of light exertional work." In her view, "[t]he ALJ failed to offer a good reason why the opinions [sic] 'vagueness' should justify throwing out any changing positions limitation entirely in [Pamela's] RFC." The complaint is unfounded.

The ALJ did not "throw out" that opinion "entirely" as Pamela contends. *See Kraus*, 988 F.3d at 1025. He assigned it little weight and gave sound reasons for doing so. *See id.* ("The ALJ appropriately disregarded the unsupported conclusory elements."). The ALJ also reasonably discounted the lifting-limitation opinion because it was based on Pamela's self-report rather than objective medical evidence. *See Vance*, 860 F.3d at 1120.

He then included Dr. Navarette's opinions with the other record evidence in determining Pamela's RFC. *See Kraus*, 988 F.3d at 1025; *Wilburn v. Astrue*, 626 F.3d 999, 1003 (8th Cir. 2010) (crediting an ALJ's statement regarding the discharge of his duties based in part on the presumption of regularity). Given the nature of Dr. Navarette's opinions on Pamela's functional abilities, the ALJ did not reversibly err in assigning them less weight. *See*, *e.g.*, *Toland v. Colvin*, 761 F.3d 931, 937 (8th Cir. 2014) (concluding the nature of the treating physician's opinion justified "relying more heavily on other opinions in the record").

The same is true for Wilken's opinions regarding Pamela's mental limitations. The ALJ properly noted Wilken, as a nurse practitioner, "is not an acceptable medical source" yet still considered his opinion "with regard to the severity of [Pamela's] impairments and

13

associated limitations." *See*, *e.g.*, *Cypress v. Colvin*, 807 F.3d 948, 950-51 (8th Cir. 2015); 20 C.F.R. §§ 404.1527(f), 416.927(f). Under §§ 404.1527(f)(2) and 416.927(f)(2), an ALJ "generally should explain the weight given to opinions from these sources or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case." The ALJ did that in this case.

After thoroughly describing Wilken's proposed limitations, the ALJ explained it did not give "any significant weight" to his opinion because "it is entirely unsupported." Highlighting some specific inconsistencies, the ALJ found "Wilken's opinion is extreme in light of his own treatment notes and the other evidence of record."

Pamela takes issue with what she calls the ALJ's "bad paraphrasing" of Wilken's "other source opinions." But she fails to show how that alleged error so undermines the ALJ's analysis as to require remand in these circumstances. What's more, she again mistakenly asserts that the ALJ rejected Wilken's opinions outright—as opposed to giving them less weight. *See*, *e.g.*, *Cypress*, 807 F.3d at 950 (finding no error where the ALJ partially discredited a nurse practitioner's opinion).

The Court finds the ALJ's evaluations of Dr. Navarette's and Wilken's opinions were both "appropriate and sufficiently explained." *Kraus*, 988 F.3d at 1026.

### 4. Pamela's Subjective Complaints

Pamela last argues remand is required because "the ALJ did not provide good reasons for finding [Pamela] was not credibly reporting her limitations." According to Pamela, the ALJ unduly focused on the objective medical evidence. The Court disagrees.

Evaluating a claimant's subjective complaints of pain and other symptoms "is primarily a matter for the ALJ." *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003); *accord Julin v. Colvin*, 826 F.3d 1082, 1086 (8th Cir. 2016) ("Credibility determinations

14

are the province of the ALJ."). In determining Pamela's RFC, the ALJ "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR [§§] 404.1529 and 416.929 and [Social Security Ruling 16-3p ("SSR 16-3p")]."[3]

To properly evaluate a claimant's subjective complaints, an "ALJ must consider objective medical evidence, the claimant's work history, and other evidence relating to (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; and (5) the claimant's functional restrictions." *Schwandt v. Berryhill*, 926 F.3d 1004, 1012 (8th Cir. 2019) (citing *Polaski*, 739 F.2d at 1322, and 20 C.F.R. § 404.1529(c)). The ALJ must decide whether objective medical evidence supports the claimant's subjective complaints of pain and other symptoms. *See Grindley*, 9 F.4th at 630.

"'[A]lthough the ALJ may not discount a claimant's subjective complaints solely because they are unsupported by objective medical evidence,'" the ALJ can discount them if they "are inconsistent with objective record evidence as a whole." *Id.* (quoting *Halverson v. Astrue*, 600 F.3d 922, 932 (8th Cir. 2010)). Because an ALJ is generally "in

---

[3]SSR 16-3p describes the process by which an ALJ should "evaluate the intensity, persistence, and limiting effects of an individual's symptoms in disability claims." *See* SSR 16-3p, Titles II & XVI: Evaluation of Symptoms in Disability Claims, 82 Fed. Reg. 49462-63 (Oct. 25, 2017). To better align SSA policy with the regulatory language and to "clarify that subjective symptom evaluation is not an examination of an individual's character," SSR 16-3p eliminated use of the term "credibility" and the requirement of a formal "credibility" finding. *Id.* at 49463; *see also Lawrence v. Saul*, 970 F.3d 989, 995 n.6 (8th Cir. 2020). Although the SSA's focus has shifted away from the claimant's "credibility," the underlying analysis is largely the same and remains consistent with *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984), which "sets forth requirements for ALJs within the Eighth Circuit." *Randolph v. Barnhart*, 386 F.3d 835, 841 (8th Cir. 2004). SSR 16-3p still requires an ALJ to examine all the evidence and consider whether the claimant's alleged symptoms, including pain, are "consistent with the objective medical and other evidence" as required by 20 C.F.R. §§ 404.1529 and 416.929, which the Eighth Circuit has observed "largely mirror the *Polaski* factors." *Schultz v. Astrue*, 479 F.3d 979, 983 (8th Cir. 2007).

a better position to evaluate credibility," the Court will defer to the ALJ's "credibility determinations as long as they [are] supported by good reasons and substantial evidence." *McDade v. Astrue*, 720 F.3d 994, 998 (8th Cir. 2013) (alteration in original) (quoting *Cox v. Barnhart*, 471 F.3d 902, 907 (8th Cir. 2006)). Such is the case here.

After the second hearing, the ALJ followed the SSA's two-step process for evaluating symptoms and concluded Pamela's "medically determinable impairments could reasonably be expected to cause [her] alleged symptoms" but found her "statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in [his] decision." In reaching that conclusion, the ALJ discussed not only the lack of objective medical evidence to support some of Pamela's complaints but also noted some inconsistencies between her statements about her disabling pain and limitations and the other record evidence, including objective medical findings that demonstrate "only mild abnormalities."

In the ALJ's view, "[t]he evidentiary discrepancies identified throughout [his] decision cast serious doubt upon the consistency of the claimant's allegations of disability." In particular, the ALJ noted Pamela reported consistently using a walker to ambulate but rarely used one for office visits and "is often observed to have a normal gait." The ALJ also noted Pamela "reports ongoing shortness of breath" despite "lung sounds and respiration" that are "typically observed to be normal." Noting Pamela "does not demonstrate objective findings, such as muscle atrophy, that would" indicate "a lack of activity to the extent alleged at the hearing and in forms she completed for this claim," the ALJ concluded Pamela's allegations were "less persuasive than the objective medical evidence."

Pamela briefly challenges the ALJ's interpretation of the evidence and the depth of his credibility analysis. She contends remand is required because "[t]he ALJ did not list

16

and discuss the other *Polaski* factors, including [her] activities and whether they supported the credibility of her reported limitations." According to Pamela, "[h]er limited activities were not consistent with an ability to perform fulltime competitive work at a light exertional level." The argument is unavailing.

"[A]n ALJ need not accept as true a claimant's testimony about the extent of [her] limitations." *Pierce v. Kijakazi*, 22 F.4th 769, 772 (8th Cir. 2022). Nor must they "explicitly discuss" every *Polaski* factor in reviewing a claimant's subjective complaints. *Schwandt*, 926 F.3d at 1012; *see also Vance*, 860 F.3d at 1120 (explaining "[a]n ALJ need not expressly cite the *Polaski* factors when" conducting an analysis under the regulations). If an ALJ discounts some of a claimant's subjective complaints "and gives a good reason for doing so," the Court "will defer to [their] judgment even if every factor is not discussed in depth." *Milam v. Colvin*, 794 F.3d 978, 984 (8th Cir. 2015) (quoting *Perkins v. Astrue*, 648 F.3d 892, 900 (8th Cir. 2011)).

After careful review, the Court is satisfied the ALJ sufficiently considered the relevant factors, including Pamela's daily activities (and alleged inactivity), and adequately explained his decision to discount some of her subjective complaints. *See, e.g.*, *Aguiniga*, 833 F.3d at 902 ("An ALJ may discredit any subjective allegations that cannot reasonably be expected to flow from an established, medically determinable impairment."). Again, the ALJ could have said more about the salient factors in his written opinion. *See Roberson v. Astrue*, 481 F.3d 1020, 1025 (8th Cir. 2007) ("It might have been better if the ALJ had referred specifically to [the claimant's] work record."). But his decision is supported by substantial evidence, and any deficiencies in his opinion do not constitute reversible error in these circumstances. *See Grindley*, 9 F.4th at 631 (explaining "a deficiency in opinion-writing is not a sufficient reason for setting aside an administrative finding where the deficiency had no practical effect on the outcome of the case." (quoting *Sloan v. Saul*, 933 F.3d 946, 951 (8th Cir. 2019))).

17

To the extent Pamela contends the ALJ should have weighed the relevant facts "differently or drawn different conclusions" based on the record evidence, those contentions likewise "do not warrant relief under [the requisite] deferential standard of review." *Hensley v. Colvin*, 829 F.3d 926, 934 (8th Cir. 2016) ("It is not the role of this court to reweigh the evidence presented to the ALJ.").

### III. CONCLUSION

Having carefully reviewed the administrative record and the parties' respective submissions, the Court finds the Commissioner's denial of Pamela's application for disability benefits and supplemental security income is supported by substantial evidence on the record as a whole. Accordingly,

IT IS ORDERED:
1. Pamela's Motion for an Order Reversing the Commissioner's Decision (Filing No. 18) is denied.
2. The Commissioner's Motion to Affirm Commissioner's Decision (Filing No. 22) is granted, and her decision to deny benefits is affirmed.
3. Pamela's Complaint (Filing No. 1) is dismissed with prejudice.
4. A separate judgment will issue.

Dated this 30th day of March 2022.

BY THE COURT:

Robert F. Rossiter, Jr.
Chief United States District Judge